J. CHARLES SAUTER, ADMINISTRATOR, RESPONDENT, *v.* NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Proximate cause — effect of negligence of physician — Northampton tables.*

The plaintiff's intestate, while leaving one of defendant's trains, at Poughkeepsie, was, by a sudden backward movement of the train, thrown against the iron railing of the platform and ruptured. An operation was performed to reduce the hernia; instead of returning the intestine to the abdominal cavity, it was by mistake placed in an abnormal cavity, between the peritoneum and the pubic bone. Whether death was occasioned from this mistake, or from another hernia also caused by the accident, was in dispute. The court charged that if death was occasioned by the negligence or maltreatment of the physician, that the plaintiff could not recover; that if the jury should find that this hernia received the best professional skill, and that such skill was accompanied by liability to accident and mistake, and that such error was one of the concomitants of the disease to which those who suffered from it were exposed; that then such mistake would not relieve the defendant from liability for having caused the disease. *Held,* that this was correct.

It is the duty of a railroad company, at a time when passengers are getting out of the cars, after an announcement by the conductor that ten minutes would be given for refreshments, to permit the cars to stand still.

In an action to recover damages occasioned by the death of the plaintiff's intestate, the Northampton tables are properly received in evidence to show the probable duration of the life of the deceased.

APPEAL from a judgment in favor of the plaintiff entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon a case and exceptions, and from an order denying a motion for a new trial, upon the ground of surprise and newly discovered evidence.

The action was brought to recover damages for the death of John Sauter, the plaintiff's intestate, which was claimed to have been caused by the wrongful act or negligence of the defendant.

On the 17th of March, 1874, John Sauter was a passenger on one of the defendant's trains of cars from Schenectady to Poughkeepsie. When the train had arrived at Poughkeepsie, and the deceased was going out of the car door upon the forward platform for the purpose of leaving the car, the train gave a sudden backward jerk, moving three or four feet, and the deceased stumbled against the railing, and from this cause, injury was claimed to have resulted, which produced the death of plaintiff's intestate.

*S. W. Jackson*, for the appellant.

*E. W. Paige*, for the respondent.

LEARNED, P. J.:

A motion was made, after the verdict, for a new trial, on the ground of surprise and newly discovered evidence. It was denied, and an appeal is taken.

The accident which is alleged to have occasioned the death of plaintiff's intestate, occurred as he was alighting from a train of cars at Poughkeepsie. It was caused by a jerk backward of the cars. Two trains arrive at that place between seven and half-past seven P. M. The first is number thirty-two, or the milk train, and the second is number thirty, the New York special express. The plaintiff's testator was in the former. The defendant's attorney supposed that the accident occurred on the latter, and did not dis-

cover the fact to be otherwise until the commencement of the trial. He did, however, discover this fact from the testimony of the first witness; and he made no motion to put off the trial, or for time to procure witnesses, now alleged to be necessary.

Again, the milk train, on its arrival at Poughkeepsie, was left standing, while the engine which had drawn it was detached, went southerly, and was switched off to another track. Then the engine which was to draw train number thirty from Poughkeepsie to New York, and which was standing below the switch, south of the bridge, was backed up to the milk train, and pushed it back 150 feet or more. Now Sawyer, the engineer of that engine, was a witness on the trial, and testified that, when he backed up, he did not jerk the milk train backward. There is no suggestion that any engine other than his pushed back the milk train; and the case was tried on the theory that the jerk was produced by that engine. The witnesses whom the defendant desires to call on a new trial are the conductor of the milk train and the engineer of the engine which drew it. And he desires to show by them, that that engine did not jerk the cars. But it was not pretended, on the trial, that the jerk was produced by that engine. On the contrary, the charge of the court shows that the case was tried on the theory that the jerk, if there were any jerk, was produced by the engine of the witness Sawyer. The witness Myers did not state that the jerk occurred at once on the arrival of the train, so that there is nothing to indicate that it was not produced by Sawyer's engine. We do not think that there is any reason for granting a new trial on the ground of surprise or newly discovered evidence.

The plaintiff's testator was in good health, and cheerful, when he came down in the cars. As he stepped on the platform to get out at Poughkeepsie there was a jerk of the train three or four feet; he stumbled against the railing, then got off the cars, and walked to the house where he was going. He did not reply to his grandson, who was with him; he went to his daughter's house; did not appear as pleasant as usual; took no food, only a little tea, which he vomited. He suffered much pain in the night. The next day a physician was called, and it was found that he had inguinal hernia. He never left his bed again alive. With the testimony of physicians as to what may cause this injury, there was

sufficient to go to the jury on the question whether the blow received by the jerk of the cars was the cause. The blow was a sufficient cause, and the sudden change from cheerfulness to silence and apparent suffering, indicated the time when the injury happened.

Again, it is claimed, by the defendant, that the injury was not the proximate cause of his death. It appeared that, in the attempt made by the physicians to reduce the hernia, a mistake was made. The intestine, instead of being returned to the abdomen, was returned into a fissure or sac between the peritoneum and pubic bone. The operating physicians supposed that they had returned the intestine to the abdomen. There is testimony that, if the intestine had been properly returned, the patient would probably have recovered. The fissure or sac into which the intestine was returned, according to the testimony, could not have been caused by the alleged jerk of the cars. It was attributed, by physicians who testified, to the act of the patient, or to the manipulation by the physicians who attempted to reduce the hernia by pressure.

The defendant's counsel requested the court to charge, that if the death of the deceased was proximately caused by the doctors placing or forcing the protruding bowels into some abnormal cavity, where it was subjected to an increased pressure or drag, the plaintiff cannot recover. The court declined to charge otherwise than as had been already charged.

The court had already charged that the jury could find for the defendant if the death was caused by the error, or ignorance, or blunder, or maltreatment of the physician ; that if the hernia was not the proximate cause of the death, the plaintiff could not recover ; that the jury should find for the defendant, unless they found that the hernia was caused by the negligent movement of the cars, and that the hernia was the proximate cause of the death ; that if the ailment was of such a character that, with proper and timely treatment, it would not have been followed by death, and if death was the result of wrong and improper treatment by the physicians, the plaintiff could not recover.

The court had further charged, in substance, that if the jury found that this hernia required the best professional skill, and that such skill is accompanied by liability to accident and mistake and error, and that, liability to such error is one of the concomitants of

the disease to which a patient who suffers under it is exposed, then that this mistake did not relieve the defendants from having caused the disease.

The request of the defendant, therefore, asked the court to charge that the plaintiff could not recover, without regard to the question whether or not the best professional skill had been employed, or to the question whether the best professional skill might not commit the error which was committed in this case.

Now, it is to be observed, that the jury have found that the defendant's negligence produced the hernia. The attending physicians did not produce the hernia. They only failed, by mistake, to reduce it. The intestine was constricted in two places, and the physician relieved only one stricture.

The question here presented is that of remote and proximate causes. In *Insurance Company* v. *Tweed* (7 Wall., 44), the court say: " If we could deduce the best possible expression of the rule it would remain, after all, to decide each case largely upon the special facts belonging to it, and often upon the very nicest discrimination. * * * If a new force or power has intervened, *of itself* sufficient to stand as the cause of the misfortune, the other must be considered as too remote." So, in *Cuff* v. *N. and N. Y. R. R.* (35 N. J., 17), the intervention of the *independent* act of the third person, is said to be a test of the remoteness of cause. To the same effect is Wharton on Negligence (§ 134, *et seq.*). Now the calling in of a physician, and his action, cannot properly constitute the intervention of a new force *of itself*, or the *independent* act of a third person. It is the proper consequence of the injury. Not to call him in might be of itself negligence. What he does, therefore, with all its liability to error or mistake, is also a proper consequence of the injury. Certainly, unless the act of the physician was such as to constitute culpable malpractice, the defendant should not be relieved from liability. But the request to charge, if complied with, would have relieved the defendant from liability, without regard to the question whether or not the physician was liable. And the court had already charged that the defendants were relieved if the death was caused by the physician's error, ignorance, blunder or maltreatment. We think that there was no error in the refusal to charge as requested.

An objection was made to the introduction of the Northampton tables. They were introduced for the purpose of showing the probable duration of the life of the deceased. They were objected to as immaterial and improper. They have been held to be admissible. (*Schell* v. *Plumb*, 55 N. Y., 592.) It is objected, however, that the damages do not depend on the probable duration of the life of the deceased, but on the length of time for which his life would be valuable. Still, the probable duration of his life must have entered into, and formed a part of the estimate of the length of time for which it would be valuable. It is not conclusive, but is material. His actual age, his habits and his income were shown. We think there was no error in the admission of these tables.

The defendants also requested the court to charge that the plaintiff cannot recover, unless the jury find that injury to a passenger situated as deceased was, would be reasonably apprehended by a prudent man, as the result of such a movement of the cars as was made in this case. The court declined, except as already charged. The court had already charged that if, after having stopped the train, it was given such a jolt as would endanger the safety of the lives of the passengers, it was such an act as would authorize them to find in favor of the plaintiff. And thus the liability of the defendant was made to depend on the jolt being such as would endanger the safety of the lives of the passengers. The train had stopped at Poughkeepsie. The conductor had announced ten minutes for refreshments. The passengers were getting out, and the deceased was doing the same, as he might and should do. He was lawfully upon the platform. And it was the duty of the defendants, at a time when the passengers were lawfully getting out of the cars, to permit the cars to stand still. For the passengers had a right to suppose that the cars would remain stationary. It would be unreasonable to say that the defendants might give the cars a sudden jerk, provided a prudent man would not reasonably apprehend injury therefrom to a passenger standing on the platform with satchel and umbrella, and about to step off. If the deceased was injured by the sudden motion of the cars, as the jury have found, the defendants were to blame. Because they had done every thing to indicate that the cars were to be stationary,

and that the deceased might depend on this. If they had then desired to move the cars, they could easily have warned persons from the dangerous position of the platform. We think there was no error in the refusal.

The judgment should be affirmed, with costs.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Judgment and order affirmed, with costs.